Scott E. Davis
State Bar No. 016160
SCOTT E. DAVIS, P.C.
8360 E. Raintree Drive, Suite 140
Scottsdale, AZ 85260

Telephone:  (602) 482-4300
Facsimile:  (602) 569-9720
email: davis@scottdavispc.com

*Attorney for Plaintiff Michael Woolsey*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| | Case No. |
| Michael Woolsey, | **COMPLAINT** |
| Plaintiff, | |
| v. | |
| Aetna Life Insurance Company; UBS Financial Services, Inc. (Wealth Management); UBS Financial Services, Inc. (Wealth Management) Disability Plan, | |
| Defendants. | |

Now comes the Plaintiff Michael Woolsey (hereinafter referred to as "Plaintiff"), by and through his attorney, Scott E. Davis, and complaining against the Defendants, he states:

### *Jurisdiction*

1.      Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f). Those provisions give the district courts jurisdiction to hear civil actions brought to recover employee benefits.  In addition, this action may be brought before this Court pursuant to 28 U.S.C. §1331, which gives the Court jurisdiction over actions that arise under the laws of the United States.

-1-

***Parties***

2.     At all times relevant to this action, Plaintiff was a resident of Maricopa County, Arizona.

3.     Upon information and belief, Defendant UBS Financial Services, Inc. (hereinafter referred to as the "Company") sponsored, administered and purchased a group long-term disability insurance policy (hereinafter referred to as the "Policy") which was fully insured by Aetna Life Insurance Company (hereinafter referred to as "Aetna").  The specific group disability policy is known as Group Policy No.: GP-062399.   The Company's purpose in purchasing the Policy was to provide disability insurance for its employees.

4.     Upon information and belief, the Policy may have been included in and part of an employee benefit plan, specifically named the UBS Financial Services, Inc. (Wealth Management) Disability Plan (hereinafter referred to as the "Plan") which may have been created to provide the Company's employees with welfare benefits.

5.     At all times relevant hereto, the Plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1).

6.     Upon information and belief, Aetna functioned as the claim administrator of the Plan and Policy.  However, pursuant to the relevant ERISA regulation, the Company and/or the Plan may not have made a proper delegation or properly vested fiduciary authority or power for claim administration in Aetna.

7.     Aetna operated under a financial conflict of interest in fully insuring and administering Plaintiff's long-term disability claim due to the fact that it operated in dual roles as the decision maker with regard to whether Plaintiff was disabled, as well as the payor of benefits.

8.     Aetna's conflict of interest existed and manifested in that if it found Plaintiff was disabled, it was then financially liable for the payment of his long-term disability benefits.

9.     The Company, Aetna and the Plan conduct business within Maricopa County and all events giving rise to this Complaint occurred within Arizona.

### *Venue*

10.    Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391.

### *Nature of the Complaint*

11.    Incident to his employment, Plaintiff was a covered employee pursuant to the Plan and the relevant Policy and a "participant" as defined by 29 U.S.C. §1002(7).

12.    Plaintiff seeks disability income benefits from the Plan and the relevant Policy pursuant to §502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B), as well as any other non-disability employee benefits he may be entitled to from the Plan, any other Company Plan and/or the Company as a result of being found disabled in this action.

13.    After working for the Company as a loyal employee in the occupation of a Financial Advisor, Plaintiff became disabled from working in that occupation, and also in any occupation, on or about January 6, 2016.  Plaintiff has remained continuously totally disabled since that date due to his serious medical conditions.

14.    Plaintiff was unrepresented throughout the entirety of his short and long-term disability claims with Aetna.

15.    Following the onset of his disability, Plaintiff filed a claim for short-term disability benefits which was administered and reviewed by, and approved by Aetna.

16.    The relevant short-term disability Plan was self-insured by the Company, meaning that it paid all short-term disability benefits if Plaintiff was found disabled by Aetna.  When it had no financial liability for the decision it made, Aetna found Plaintiff met

the definition of disability set forth in the short-term disability Plan and that he was disabled *throughout the entire* short-term disability timeframe (six months).  Therefore, Plaintiff's short-term disability benefits have all been paid and have all been exhausted.

17.    Plaintiff asserts the fact that Aetna's approval of his short-term disability claim, using a *similar definition of disability* as is contained in his long-term disability Policy, when it was not financially liable to make payments to Plaintiff as a result of its approval, is relevant evidence for this Court to consider with regard to the unreasonableness of Aetna's denial of his long-term disability claim, and also evidence that its denial of his long-term disability claim was influenced by Aetna's financial conflict of interest in that claim and its desire to save money, because Aetna was fully liable for all of Plaintiff's long-term disability benefits.

18.    When Aetna denied Plaintiff's long-term disability claim, it saved hundreds of thousands of dollars in unpaid long-term disability benefits to Plaintiff.

19.    Following the exhaustion of his short-term disability claim/benefits, Plaintiff then filed his claim for long-term disability benefits under the relevant Policy, which was also administered by Aetna.  Aetna made every decision in Plaintiff's long-term disability claim, which was to deny it.

20.    Upon information and belief, the relevant Aetna Policy's definition of disability governing Plaintiff's long-term disability claim is as follows:

Test of Disability
You meet the test of disability on any day that:

- You cannot perform the material duties of your own occupation solely because of an illness, injury or disabling pregnancy-related condition; and
- Your earnings are 80% or less of your adjusted pre-disability earnings.

21.     In support of his claim for long-term disability benefits, Plaintiff submitted to Aetna medical and other evidence which supported his allegation that he met the definition of disability as defined in the relevant Policy.

22.     Plaintiff submitted to Aetna one of its own medical questionnaires dated June 14, 2016, which was completed by Plaintiff's treating medical professional, who confirmed Plaintiff's medical conditions "…do not allow patient to appropriately function in a position where high level of…function is needed."

23.     Plaintiff also submitted to Aetna a February 26, 2016 medical record from the same treating medical professional who stated, "At this time a strong recommendation continues that [Plaintiff] not work and he is unable to work at this time…"

24.     Further supporting his claim, Plaintiff submitted to Aetna a June 7, 2016 medical record from the same treating medical professional who confirmed, "[Plaintiff] is pursuing long term disability which is reasonable given for [sic] his current position and type of work he can no longer appropriately function…at the level needed to continue in his profession."

25.     In a letter dated July 1, 2016, Aetna informed Plaintiff it was denying his claim for long-term disability benefits without any medical documentation to support its allegation that Plaintiff could return to work in his Own Occupation, or any other occupation, and earn at least 80% of his pre-disability earnings.

26.     Aetna denied Plaintiff's long-term disability claim without any documentation that Plaintiff's medical condition had improved in any meaningful way which would have allowed him to return to his occupation, since Aetna had approved his short-term disability claim.

27.     A July 1, 2016 "Show All Notes Report" (Aetna's internal claim notes) confirms Aetna denied Plaintiff's claim in part because, "…*objective* information has not

been supplied to show EE [employee] is unable to perform his, or any, occ [occupational] duties" (*emphasis* added).

28.     Aetna's July 1, 2016 "Show All Notes Report" is evidence that Aetna unlawfully violated ERISA and Ninth Circuit case law by importing a new requirement into the Policy that Plaintiff prove his claim and that he met the definition of disability with "objective" medical evidence, when there is no such requirement in the Policy.

29.     Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed Aetna's July 1, 2016 denial of his claim and submitted additional medical and other evidence supporting his appeal and his allegation that he is disabled and meets the definition of disability in the Policy.

30.     In support of his claim for disability benefits, Plaintiff submitted to Aetna one of its own medical questionnaires dated October 21, 2016, which was completed by Plaintiff's treating medical professional who confirmed, "…[Plaintiff] is unable to do any …functions related to work."

31.     Plaintiff also submitted to Aetna an October 19, 2016 medical record from his board certified treating physician/specialist who opined, "…[Plaintiff] continued to clearly remain disabled."

32.     Further supporting his claim, Plaintiff submitted to Aetna a November 8, 2016 medical record from his treating medical professional who confirmed he was "Unable to work," and a November 22, 2016 medical record from the same medical professional who reiterated, "[Plaintiff] is disabled and totally unable to work," due to his medical conditions.

33.     As part of its review of Plaintiff's claim for long-term disability benefits, Aetna obtained two (2) medical records only "paper reviews" from two medical professionals of its choosing, Dr. Nowell and Joseph Rea, M.D.

34.     Upon information and belief, Plaintiff asserts Drs. Nowell and Rea may be long time medical consultants for Aetna and/or the disability insurance industry.  As a result, Drs. Nowell and Rea may have a conflict of interest and have an incentive to protect their own consulting relationships with Aetna, and/or the disability insurance industry by providing medical records only "paper reviews," which selectively review or ignore evidence such as occurred in Plaintiff's claim, in order to provide opinions and report(s) which are favorable to insurance companies and that unreasonably supported the denial of Plaintiff's claim.

35.     Plaintiff further asserts that pursuant to the relevant ERISA regulation, 29 C.F.R. § 2560.503-1(h)(3), Joseph Rea, M.D., was not an appropriate medical professional to conduct a review of his claim, because he did not have the appropriate medical expertise, training and/or credentials to adequately review all of Plaintiff's disabling diagnoses.  In having Dr. Rea review the claim, rather than an appropriate medical professional who had the relevant medical expertise to do so, Aetna violated ERISA 29 C.F.R. § 2560.503-1(h)(3).  As a result of Aetna retaining and then relying on Dr. Rea's review to deny Plaintiff's claim,  Aetna failed to provide a "full and fair" review pursuant to ERISA.

36.     Prior to rendering its December 15, 2016 final denial in Plaintiff's claim, Aetna unlawfully never shared with Plaintiff, or his treating medical professionals (critically, who all opined he was disabled and unable to work), the medical records only "paper reviews" authored by Drs. Nowell and Rea, so they could respond to the reports by addressing any issues and/or deficiencies Aetna believed were present in Plaintiff's claim.

37.     Aetna's failure to provide an unrepresented Plaintiff and his treating medical professionals with its doctors' reports before issuing its final denial was not the action of a fiduciary, because they precluded a "full and fair" review pursuant to ERISA.  This failure by Aetna precluded Plaintiff from curing any alleged deficiencies Aetna believed existed in his claim. The alleged deficiencies were not inconsequential; Aetna relied on its doctors'

opinions and their rationales to deny his claim.  Aetna's failure to act as his fiduciary in not providing its doctors' reports to Plaintiff during his appeal precluded him from being able to perfect and prove his claim pursuant to ERISA.

38.     During a November 2, 2016 telephone conversation with one of Plaintiff's treating medical professionals, he informed Dr. Rea that "currently, specialists were involved in [Plaintiff's treatment of migraine headaches]…" and "…that the headache specialist at their Mayo Clinic facility believes that the migraine headaches were a disabling factor."

39.     Dr. Rea's bias and conflict of interest is evidenced by the fact that even when he knew one of Plaintiff's treating board certified MAYO CLINIC physicians (who treated Plaintiff for one of his disabling medical conditions) believed he was disabled; incredibly, Dr. Rea never contacted Plaintiff's MAYO CLINIC physician at any time during his review, or before he authored his medical records only "paper review."

40.     Dr. Rea apparently declined to contact Plaintiff's MAYO CLINIC physician regarding his opinion that Plaintiff was disabled, even though Dr. Rea was aware that his opinion that Plaintiff was not disabled was completely contradicted by Plaintiff's MAYO CLINIC treating physician's opinion, which was that Plaintiff was disabled.

41.     Aetna's failure to provide Plaintiff and his treating medical professionals with the opportunity to respond to Drs. Nowell and Rea's reports is an ERISA procedural violation, and precluded Aetna from providing Plaintiff with a "full and fair" review as required by ERISA.  Aetna's actions also violated Ninth Circuit case law as the Court held in *Salomaa v. Honda Long Term Disability Plan,* 642 F.3d 666, 680 (9th Cir. 2011):

> "The plan evidently based its denial in large part on review of Salomaa's file by two physicians, one for the first denial, *another for the final denial*. They both wrote their appraisals for the plan administrator. Yet the plan failed to furnish their letters to Salomaa or his lawyer.  The regulation, quoted above, requires an ERISA plan to furnish 'all documents, records, and other information relevant for benefits to the claimant.' *A physician's evaluation provided to the plan administrator falls squarely within this disclosure requirement*" (emphasis added).

42.     In an October 6, 2016 medical record from Plaintiff's treating medical professional, which was submitted to Aetna on appeal, the medical professional confirmed on that day he had a telephone conversation with Stuart Orsher, M.D., a physician employed/contracted by Plaintiff's Company to evaluate Plaintiff's ability to return to work in his occupation with the Company.

43.     Plaintiff's October 6, 2016 medical record confirms that during their conversation, Plaintiff's medical professional documented the substance of the telephone call with Dr. Orsher and his opinion by noting, ***"Given [Plaintiff] is in a high functioning position...Dr. Orsher denied him to be able to return to work."***

44.     An October 5, 2016 "Show All Notes Report" (Aetna's internal claim notes) confirms Aetna was aware of Dr. Orsher's opinion several months *prior* to issuing its final denial on December 15, 2016, ***"ER [employer] is not letting [Plaintiff] come back under his current condition…"***

45.     Aetna's October 5, 2016 "Show All Notes Report" in the Administrative Record confirms that prior to denying Plaintiff's claim on December 15, 2016, Aetna was aware the Company's own doctor, Dr. Orsher, did not believe Plaintiff could return to work, and that the Company would not allow Plaintiff to return to work in his prior occupation due to his disabling medical conditions.

46.     Notwithstanding the fact that Aetna and its own reviewing medical professionals' opinions totally contradicted Dr. Orsher's opinion, prior to issuing its December 15, 2016 final denial, neither Aetna nor its reviewing medical professionals ever personally contacted or communicated with Dr. Orsher to discuss Plaintiff's claim and/or Dr. Orsher's opinion that Plaintiff was unable to work.

47.     Plaintiff asserts that the Company and Dr. Orsher's review of his disability claim, and their conclusion that due to his medical conditions and limitations he was not able to return to his occupation with the Company, is evidence of the decision that an un-

conflicted entity would make based on essentially the same evidence that Aetna reviewed, before issuing its December 15, 2016 final denial letter.

48.    In Aetna's letter dated December 15, 2016, notwithstanding Plaintiff's aforementioned evidence which clearly proved he met the definition of disability in the Policy, and that the Company's own doctor (Dr. Orsher) would not allow Plaintiff to return to work in his occupation, Aetna notified him that it had again denied his claim for long-term disability benefits.

49.    In its denial letter dated December 15, 2016, Aetna notified Plaintiff he had exhausted his administrative levels of review and that he could file a civil action lawsuit in federal court pursuant to ERISA.

50.    Aetna's December 15, 2016 denial letter is clear evidence that it breached its ERISA fiduciary duty to Plaintiff and failed to provide a "full and fair review," as required by ERISA.    During its review, Aetna either negligently or intentionally committed numerous ERISA procedural violations as identified herein which allowed Aetna to deny Plaintiff's claim even though ERISA's regulations were enacted to protect individual's rights, such as Plaintiff's.

51.    Aetna's ERISA violations include but are not limited to, completely failing to credit, reference, consider, and/or selectively reviewing and de-emphasizing most, if not all of Plaintiff's reliable evidence which proved that he met the definition of disability in the Policy, and failing to provide its medical reviewers' reports to Plaintiff and his medical professionals during his appeal, and at a time when it mattered so they could respond to them, which was prior to when Aetna issued its final denial on December 15, 2016.

52.    Subsequent to Aetna's December 15, 2016 final denial, Plaintiff applied for and was approved for and is currently receiving Social Security disability benefits through the Social Security Administration (hereinafter referred to as the "SSA").

53.     The SSA found Plaintiff became disabled from engaging in any gainful occupation which may have existed in the national economy as of January 6, 2016, the same date as Plaintiff's date of disability in his Aetna LTD claim.  Plaintiff's medical evidence was so compelling to SSA that it approved his claim without SSA requiring him to attend a hearing before an Administrative Law Judge.

54.     SSA's definition of disability (i.e. Plaintiff must be disabled from any occupation) is more stringent and difficult to meet than the aforementioned definition of disability in the Aetna Policy (Plaintiff must only be disabled from his own occupation).

55.     Therefore, SSA's review and approval of Plaintiff's SSA claim is relevant conflict of interest evidence for this Court to consider with regard to the unreasonableness and unlawfulness of Aetna's contrary decision, which was to deny Plaintiff's claim and his long-term disability benefits.

56.     In evaluating Plaintiff's claim on appeal, Aetna owed him a fiduciary duty and had an obligation pursuant to ERISA to administer it, "solely in [his] best interests and other participants" which it failed to do. [1]

57.     Aetna failed to adequately investigate and failed to engage an unrepresented Plaintiff in a dialogue during the appeal of his claim with regard to what evidence was necessary so Plaintiff could perfect his claim/appeal in order to prove that he is disabled as that term is defined in the Policy.  Aetna's failure to investigate the claim and to engage in this dialogue, and failure to ask for and/or obtain the evidence it believed was necessary and

---

[1] It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," Firestone, 489 U.S., at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B). *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (U.S. 2008).

critical to cure any deficiencies so Plaintiff could perfect his claim, is particularly egregious given the nature and severity of Plaintiff's disabling medical conditions and because he was unrepresented throughout Aetna's review.   Aetna's failure to engage in a dialogue is evidence that its denial of Plaintiff's claim was motivated by its conflict of interest, it is also an ERISA procedural violation which also violates Ninth Circuit case law and is evidence that he did not receive a "full and fair" review.

58.     Plaintiff asserts Aetna provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, by failing to credit Plaintiff's reliable evidence; by failing to have Plaintiff's claim reviewed by truly independent medical professionals; by failing to have Plaintiff's claim reviewed by an appropriate medical professional who had relevant medical expertise and training as required by ERISA 29 C.F.R. § 2560.503-1(h)(3), 3(iii); by unlawfully inserting a Policy requirement that Plaintiff had to prove his claim with objective medical evidence when there is no such term or requirement in the Policy; by failing to consider the opinion of Dr. Orsher, the Company's own doctor who opined Plaintiff was disabled and unable to work; by failing to obtain an Independent Medical Examination when the Policy allowed for one and Plaintiff's disabling medical conditions and work limitations could not be easily understood with only a medical records "paper review," or a Functional Capacity Evaluation, which raises legitimate questions about the thoroughness and accuracy of its review and denials; by providing biased and one sided reviews of Plaintiff's claim that failed to consider all the evidence submitted by him and/or by de-emphasizing medical and other evidence which supported Plaintiff's claim; by disregarding and/or failing to consider Plaintiff's disabling subjective and self-reported complaints/symptoms/limitations; by failing to consider the combined effect that all of his medical conditions and resulting limitations documented in his medical evidence would have on his ability to work in his occupation; by failing to engage Plaintiff in a dialogue so he and his medical professionals

could respond to Aetna's reviewing medical professionals' reports by submitting the necessary evidence to perfect his claim so he could prove he is "disabled" as that term is defined in the Policy, and by failing to consider the impact the side effects that Plaintiff's medications would have on his ability to engage in his "Own Occupation."

59.     Plaintiff asserts a reason Aetna provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, is due to its financial conflict of interest that manifested as a result of the dual roles Aetna undertook as the decision maker and the payor of benefits.  Aetna's conflict of interest provided it with a financial incentive to deny Plaintiff's long-term disability claim.

60.     Aetna's conflict of interest manifested when it denied Plaintiff's claim because due to its denial of his claim, Aetna saved *hundreds of thousands of dollars* in disability benefits that it did not have to pay Plaintiff, even though he is legally entitled to them.

61.     Aetna's conflict of interest also manifested because it approved Plaintiff's short-term disability claim when the definition of disability in both policies was essentially the same, as was the evidence, but Aetna incurred no financial liability when it found Plaintiff was disabled and approved his short-term disability claim.  When Plaintiff's short-term disability claim ended and he was paid all short-term disability benefits due by the Company, Aetna was then confronted with potentially being liable to pay Plaintiff hundreds of thousands of dollars in benefits in his long-term disability claim if it approved it; instead, due to its conflict of interest Aetna chose to deny the long-term disability claim.

62.     Plaintiff is entitled to discovery regarding how Aetna evaluates claims which transition from short-term to long-term disability, as well as statistics regarding the rate at which Aetna approves and denies these claims, given Aetna's conflict of interest and its contradictory decisions in approving Plaintiff's short-term disability claim when it had no

financial liability and then denying his long-term disability claim when Aetna was fully liable for its decision.

63.     Plaintiff is entitled to discovery regarding Aetna's aforementioned conflicts of interest referenced herein, as well as of any third party vendor hired by Aetna and of any medical professional retained by a third party vendor to review Plaintiff's claim, and of *any* individual, medical professional or otherwise, who reviewed his medical evidence or claim.

64.     The Court may properly weigh and consider extrinsic evidence regarding the nature, extent and effect of *any* conflict of interest and/or any ERISA procedural violation which may have impacted or influenced Aetna's decision to deny his long-term disability claim.

65.     The standard of review for this Court to apply is *de novo* as the Aetna Policy does not contain discretionary language.

66.     In denying his claim, Plaintiff alleges Aetna failed to provide a full and fair review pursuant to ERISA, and that its denial of his long-term disability claim is a *de novo* wrong decision, because his evidence proves that he met the definition of disability in the Aetna Policy.

67.     If the Court concludes the Policy confers discretion and the standard of review is for abuse of discretion, Plaintiff asserts that Aetna's decision which resulted from its conflict of interest and its numerous unlawful ERISA violations as referenced herein, constitutes an abuse of discretion. Plaintiff also asserts that in denying Plaintiff's claim, Aetna did not provide a "full and fair" review as required by law and its ERISA violations are so flagrant they justify *de novo* review.  Regardless of the standard of review, Plaintiff is entitled to discovery regarding the conflicts of interest, bias and ERISA procedural violations referenced herein.

68.     As a direct result of Aetna's decision to deny Plaintiff's disability claim, he has been injured and suffered damages in the form of lost long-term disability benefits in

addition to other potential non-disability employee benefits he may be entitled to receive through or from the Plan, from any other Company Plan and/or the Company as a result of being found disabled in this matter. Plaintiff believes that other potential non-disability employee benefits may include but not be limited to, health insurance (coverage) and other insurance related coverage or benefits, retirement benefits or a pension, life insurance coverage and/or the waiver of the premium on a life insurance policy providing coverage for him and his family/dependents. Plaintiff seeks any and all employee benefits, and/or any other benefits he may be due from Defendants as a result of being found disabled in this matter.

69.     Pursuant to 29 U.S.C. §1132, Plaintiff is entitled to recover unpaid disability and non-disability employee benefits, prejudgment interest, reasonable attorney's fees and costs from Defendants.

70.     Plaintiff is entitled to prejudgment interest at the legal rate pursuant to A.R.S. §20-462, or at such other rate as is appropriate to compensate him for the losses he has incurred as a result of Defendants' nonpayment of benefits.

WHEREFORE, Plaintiff prays for judgment as follows:

A.     For an Order finding that the evidence in Plaintiff's claim is sufficient to prove he met and continues to meet the definition of disability set forth in the relevant Plan and/or Policy and that he is entitled to disability benefits, and any other non-disability employee benefits that he may be entitled to as a result of that Order, from the date he was first entitled to but denied these benefits through the date of judgment with prejudgment interest thereon;

B.     For an Order directing Defendants to continue paying Plaintiff the aforementioned benefits until such a time as he meets the conditions for the termination of benefits;

C.      For attorney's fees and costs incurred as a result of prosecuting this suit pursuant to 29 U.S.C. §1132(g); and

D.      For such other and further relief as the Court deems just and proper.

DATED this 21st day of February, 2018.

SCOTT E. DAVIS. P.C.

By:      */s/ Scott E. Davis*
         Scott E. Davis
         Attorney for Plaintiff

-16-